STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JOHN SWAN, PLAINTIFF IN ERROR.

Argued October 19, 1943—Decided December 9, 1943.

For the plaintiff in error, *Alex Eber* (*Morris Spritzer*, of counsel).

For the defendant in error, *John A. Lynch*, Prosecutor of the Pleas.

The opinion of the court was delivered by

PORTER, J. John Swan, the plaintiff in error, was convicted of murder in the first degree without recommendation as to punishment and was sentenced to death. A previous conviction for the same crime was reversed by this court for trial error. 130 *N. J. L.* 372; 32 *Atl. Rep.* (2d) 843. The writ of error brings before us the entire record in accordance with *R. S.* 2:195–16.

Three assignments of error are argued for reversal. The first and second are based on the refusal of the trial court to limit the consideration of the jury to murder in the second degree upon the close of the state's case and upon the conclusion of the entire case. The third is that the verdict was against the weight of the evidence.

We conclude that these grounds are without merit and that the judgment should be affirmed. There was evidence of first

degree·murder, as will be shown, and it was therefore not error for the court to deny the motions to limit the jury to a consideration of second degree murder.

Swan was employed as a porter in a moving picture theatre in New Brunswick. On the night of October 4th, 1942, he followed Gizella Mary Forepaugh, also known as Marion Oliver, into the women's toilet room in the theatre and there struck her, with his fists he says, about the head and face, overpowering her. He then took her back stage and stripped her of her clothing. He also took a ring from her finger and her pocketbook containing some change. Later in the night he returned and threw her nude body from an upstairs window into an adjoining yard. The following morning the body was discovered. Whether she was alive or dead when thrown from the window is not clearly shown. Swan was arrested on October 5 and admitted in writing on that day and again the next day the killing and the robbery. He showed the police where he had secreted the ring, the pocketbook and the clothing. Both confessions were admitted into evidence, and he repeated more or less the same account of his conduct when testifying in his own defense. He denied having committed rape, but he both denied and admitted in his confessions that he had intended to perpetrate that crime. The state did not contend that he had committed rape but did contend that the evidence was persuasive that he had attempted to commit that crime.

*R. S.* 2:138–2 defines degrees of murder as follows: "Murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate and premeditated killing, or which shall be committed in perpetrating *or attempting to perpetrate arson, burglary, rape, robbery or sodomy,* shall be murder in the first degree; and all other kinds of murder shall be murder in the second degree; and the jury before whom any person indicted for murder shall be tried shall, if they find such person guilty thereof, designate by their verdict whether it be murder in the first degree or in the second degree." (Italics ours.)

The state's case was presented therefore upon the theory that this homicide was committed by Swan while attempting

to perpetrate rape and while perpetrating robbery as defined by this statute *supra.*

It is argued by the plaintiff in error that the robbery was not committed, nor was the intent to do so evident until after the killing and that it was then done for the purpose of concealing the evidence of the crime; that once death occurs by homicide the degree of murder is fixed by the intent and conduct of the accused up to the point of death and cannot be changed by any subsequent act or intent and that therefore the crime was murder in the second degree. However that may be, the contention is without merit, because Swan himself said in his confessions several times, and also in his testimony at the trial, that the girl was alive when he stripped her clothes from her body, her ring from her finger and took her pocketbook.

Next to be considered is the question of whether the killing was perpetrated while an attempt was made to commit rape. This court has laid down the rule that "an attempt to commit a rape does not begin with the act of penetration, but with the primary attack upon the woman made for the purpose of carrying out the intent; and that this intent may be formed at the very moment of the attack." *State* v. *Knight,* 96 *N. J. L.* 461 (at *p.* 470); 115 *Atl. Rep.* 569. An attempt to commit a crime has three elements: first, the intent; second, performance of some act toward the commission of the crime; and third, the failure to consummate the commission of the crime. *State* v. *Schwarzbach,* 84 *N. J. L.* 268; 86 *Atl. Rep.* 423.

Applying these settled rules of law, it is entirely clear to us that under the proofs and the inferences that may properly be drawn therefrom the jury was fully justified in finding that Swan intended to rape this girl and that his intention was followed by definite overt acts, namely, his actions when accosting her and the entire circumstances, including the taking of the girl after she was overpowered to a secluded spot back stage and the tearing off of her clothing. The verdict was not, we conclude, against the weight of the evidence.

Finding no cause for reversal, the judgment is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, DILL, JJ. 15.

*For reversal*—None.