JOSEPH ANDREW HEBB, JR. *v.* STATE OF
MARYLAND

[No. 1023, September Term, 1975.]

*Decided May 10, 1976.*

The cause was argued before GILBERT, MENCHINE and MELVIN, JJ.

*Robert H. Moreland, Assigned Public Defender,* for appellant.

*Deborah K. Handel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General* and *George R. Sparling, State's Attorney for St. Mary's County* on the brief, for appellees.

GILBERT, J., delivered the opinion of the Court.

*The Law*

Whenever the voluntariness of an accused's confession, or other self-incriminating statement [1] made to police officers or prosecutorial officials, is attacked at trial, the judge should follow the guidelines laid down by the Court of Appeals in *Day v. State,* 196 Md. 384, 399, 76 A. 2d 729, 736 (1950), as explicated and embellished, by this Court, in *Mulligan v. State,* 18 Md. App. 588, 308 A. 2d 418 (1973); *Mulligan v. State,* 10 Md. App. 429, 271 A. 2d 385 (1970); *Barnhart v. State,* 5 Md. App. 222, 246 A. 2d 280 (1968).

Then Chief Judge Marbury penned for the Court of Appeals, in *Day:*

> "The practice in this State, approved in many cases, is that the court first hears evidence without the jury to determine whether a confession is voluntary and should be admitted. If it decides to admit it, the same evidence is then given to the jury, as it has the final determination, irrespective of the court's preliminary decision, whether or not the confession is voluntary, and whether it should be believed. In so doing, the jury is entitled to have before it all of the evidence which affects the

---

1. *See* Sutton v. State, 25 Md. App. 309, 315, 334 A. 2d 126, 129 (1975), where we opined that "general conversation" with an accused conducted after the invocation of *Miranda* rights was but an exercise in semantics designed to circumvent *Miranda.*

voluntary character of the document, and which the court passed upon the admitting it." 196 Md. at 399.

Subsequent to the Court's decision in *Day*, the Supreme Court of the United States handed down its decision in *Miranda v. Arizona*, 384 U. S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966). In *Miranda*, Chief Justice Warren articulated certain rights,[2] the existence of which the police are required to inform each person prior to any custodial interrogation. Absent an effective waiver of the *Miranda* rights, an inculpatory statement will be suppressed.[3] *Miranda* engrafted upon *Day* the constitutional safeguards that operate as a prerequisite to the admissibility, in the State's case-in-chief, of an inculpatory statement irrespective of its otherwise trustworthiness.[4]

If an accused asserts that his statement to the police was made in violation of *Miranda*'s tenets, the trial judge should determine, preliminarily, out of the presence of the jury, the mixed question of law and fact that is then presented. It is incumbent upon the trial judge to decide, by a preponderance of evidence, *Mulligan v. State*, 18 Md. App. at

---

2. " . . . [W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." (Footnote omitted). 384 U. S. at 478-79.

3. *See* Harris v. New York, 401 U. S. 222, 91 S. Ct. 643, 28 L.Ed.2d 1 (1971), however, where the Court permitted a statement taken in violation of *Miranda*, but otherwise trustworthy, to be used for the purpose of impeaching, on cross-examination, an accused who elected to testify in his own behalf.

4. *See* note 3 *supra*.

597-602,[5] that the accused's custodial statement was a free and voluntary expression and that *Miranda* has been satisfied. Only then may the statement be considered by the jury as part of their "beyond a reasonable doubt" fact finding process. *Gill v. State,* 265 Md. 350, 357-58, 289 A. 2d 575, 579 (1972). *See also Dempsey v. State,* 277 Md. 134, A. 2d (1976), *reversing Dempsey v. State,* 24 Md. App. 8, 330 A. 2d 204 (1974).

We made clear, in the second *Mulligan* decision,[6] 10 Md. App. at 432, that "The trial judge's conclusion that the confession was voluntary must appear from the record with unmistakable clarity." What we did not say in the second *Mulligan,* but did declare in the third *Mulligan,* is that *Lego v. Twomey,* 404 U. S. 477, 92 S. Ct. 619, 30 L.Ed.2d 618 (1972), mandates that the standard of proof the State must meet before the trial judge may admit an accused's challenged statement into evidence is that of a preponderance. *Mulligan v. State,* 18 Md. App. at 597-602. The rule now is that the record must reflect with unmistakable clarity the trial judge's finding that a statement or confession was, by a preponderance of the evidence, voluntary and made in accordance with *Miranda.*

If our independent review of the record does not disclose that the statement or confession was found by the trial judge, with unmistakable clarity, to be voluntary, or if it appears that he imposed a lesser burden of proof than preponderance upon the State in weighing the question of voluntariness, it is reversible error.

### The Instant Case

John Andrew Hebb, Jr., was convicted by a jury, presided over by Judge Joseph Mattingly, in the Circuit Court for St. Mary's County, of "grand larceny" and receiving stolen

---

**5.** *See* Felde v. State, 26 Md. App. 15, 336 A. 2d 823 (1975), *cert. denied,* 275 Md. 748 (Ct. App. August 1, 1975); Ponds v. State, 25 Md. App. 162, 335 A. 2d 162 (1975).

**6.** The *Mulligan* case was decided by this Court on three separate occasions. Mulligan v. State, 18 Md. App. 588, 308 A. 2d 418 (1973); Mulligan v. State, 10 Md. App. 429, 271 A. 2d 385 (1970); Mulligan v. State, 6 Md. App. 600, 252 A. 2d 476 (1969).

goods. Under *Bell v. State,* 220 Md. 75, 150 A. 2d 908 (1959), the verdict of the jury was defective in that a defendant cannot be both the thief and the receiver of the same goods or chattels.[7] After some discussion, and on motion of the appellant, the trial judge struck out the verdict as to the grand larceny charge and imposed a sentence of eight years on the receiving count. Such a procedure, particularly in view of the fact that sentence was imposed upon the receiving count only, satisfies *Bell v. State,* 220 Md. at 81. *See also McDuffie v. State,* 12 Md. App. 264, 267-71, 278 A. 2d 307, 308-10 (1971).

During the trial of the appellant, he interposed an objection to the admission of the incriminating statement he allegedly made to a deputy sheriff. The objection was grounded on a supposed infraction of *Miranda.* For reasons that are not clear from the record, no out of the presence of the jury hearing was held. It appears that, except for arguments of counsel made at bench conferences, the jury was allowed to hear, initially, of the statement allegedly taken by the police from the accused in violation of *Miranda.* Should the statement have been ultimately held by the trial judge to be inadmissible, the mere fact that the jury heard it or, even heard of its very existence, might have required reversal under the second *Mulligan,* 10 Md. App. at 432.[8]

A deputy sheriff testified that he orally gave to the appellant, a sixteen year old, in the presence of the appellant's parent, the complete *Miranda* warnings,[9] and

---

7. The rule that ". . . one may not be convicted of stealing that which he has been determined to have received" has been endorsed numerous times since *Bell.* Stevens v. State, 27 Md. App. 460, 467, 340 A. 2d 717, 721 (1975). *See* McDuffie v. State, *infra;* Brown v. State, 8 Md. App. 224, 230, 259 A. 2d 85, 88 (1969).

8. We observe that during one bench discussion, inferentially out of earshot of the jury, the State's Attorney asserted that, "The State has a prima facie burden of proof and the Court makes the determination, and the question of voluntariness is for the trier of fact." Patently, the State's Attorney was mistaken on the first and third of his utterances. The test is preponderance of evidence not prima facie evidence. Mulligan v. State, 18 Md. App. 597-602. The court must first determine under the preponderance test whether the statement is voluntary. *Id.*

9. The deputy related the text of the *Miranda* rights that he gave to appellant.

that appellant wanted to make a statement. We quote from the introduction to the statement:

### "VOLUNTARY STATEMENT

DATE *November 30-1974* PLACE *Sheriffs Office Leonardtown* Time Statement Started 1740 p.m. I, the undersigned, *Joseph Andrew Hebb, Jr.,* of *Compton Md.,* being *16* years of age, born at *Leonardtown Md.,* on *June 30, 1958,* do hereby make the following statement to *Deputy Richard L. Voorhaar Joe Lee Sommerville,* he having first identified himself as a *Deputy sheriffs St. Marys Co.,* knowing that I may have an attorney in my behalf present and that I do not have to make any statement nor incriminate myself in any manner. I make this statement vcluntarily, of my own free will, knowing that such statement could later be used against me in any court of law, and I declare that this statement is made without any threat, coercion, offer of benefit, favor or offer of favor, leniency or offer of leniency by any person or persons whomsoever." [10]

The format of the "Voluntary Statement" does not strictly comply with Miranda in that the full panoply of rights are not present. Missing therefrom is the constitutional right to have an attorney appointed for the accused if he cannot afford to engage one, or that the rights may be invoked at any time during interrogation. In any event, as we have said, the appellant was advised of his *Miranda* rights when the deputy read those rights to appellant in the presence of appellant's parent. There was no evidence produced by the appellant which contradicted the State's recitation of events.

Immediately after the *Miranda* rights were given to the appellant, and he indicated his desire to make a statement, he was led to another place where the illumination was better, and the "Voluntary Statement" was taken. In our

---

**10.** The italicized portions of the statement were in handwriting. The balance was a printed form.

view, the *Miranda* warnings were still viable, and it was unnecessary to repeat them in the light of the short lapse of time between the warnings and the actual making of the statement.

At the conclusion of the evidence pertaining to the voluntariness *vel non,* of the statement, the trial judge responded to an objection to its admission; "Overruled. It [the statement] will be admitted into evidence."

We have seen that a statement may be free and voluntary and still violate *Miranda.* A statement may be held to be free and voluntary, in compliance with *Miranda,* and yet not meet the requirements of *Lego v. Twomey, supra,* and the third *Mulligan, supra,* because the wrong test was used in admitting the confession or statement. The record in the case now before us is silent as to the standard of proof used by the trial judge. Did he apply *Lego-Mulligan,* or did he follow the implicit suggestion of the State's Attorney that the State need but demonstrate voluntariness by a "prima facie showing"? *See* note 8 *supra.* If the judge followed *Lego-Mulligan,* the confession was properly admitted. If he adhered to the constitutionally infirm prima facie test, there was error of such magnitude as to necessitate reversal. *Felde v. State, supra.*

While the judge did not so state, the message that comes through from a review of the record, with "unmistakable clarity," is that he believed the statement to have been made freely and voluntarily.

Judges are presumed to know the law. *Samson v. State,* 27 Md. App. 326, 334, 341 A. 2d 817, 823 (1975). *See Schowgurow v. State,* 240 Md. 121, 126, 213 A. 2d 475, 479 (1965). Absent an indication to the contrary, we must assume that judges apply the law correctly to the case before them. Therefore, inasmuch as the trial judge in the instant case did not articulate his reasons for admitting the appellant's statement into evidence, we deduce that he applied the preponderance of evidence test set out by *Lego* and the third *Mulligan.* Our independent review of the entire record leads us to conclude that there was ample evidence

for the trial judge to find, by a preponderance thereof, that the appellant's statement not only complied with the *Miranda* holding but was freely and voluntarily made.

*Judgment affirmed.*